

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS BELL TELEPHONE COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:09-cv-02189 |
| GLOBAL NAPS ILLINOIS, INC., | ) ) | Judge John W. Darrah |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This diversity case arises out of Plaintiff Illinois Bell Telephone Company, Inc.'s ("AT&T Illinois") telecommunications services provided to Defendant Global NAPs Illinois, Inc. ("Global Illinois"). Defendant moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, the motion is denied.

## BACKGROUND

Global Illinois is a Delaware corporation that is certified by the Illinois Commerce Commission ("ICC") to provide telecommunication services in Illinois. In 2003, Global Illinois and AT&T Illinois entered into an interconnection agreement ("ICA"), setting forth the terms by which the parties would interconnect their telecommunication networks and exchange telecommunications traffic. Subsequently, the ICC approved the agreement; and AT&T Illinois began providing a number of services to Global Illinois relating to the parties' exchange of telecommunications traffic. Specifically, AT&T Illinois provided high-capacity "DS3" transport facilities to Global Illinois; AT&T Illinois transported and completed calls for Global Illinois; and

AT&T Illinois transported third-party carrier traffic that Global Illinois handed off to AT&T Illinois. AT&T Illinois billed Global Illinois for these services; however, Global Illinois refused to pay.

In 2006, AT&T Illinois filed a complaint against Global Illinois in the U.S. District Court for the Northern District of Illinois, seeking to recover compensation for the services provided. On December 17, 2007, the Court dismissed a number of the claims brought by AT&T Illinois, holding that those claims should be heard by the ICC. *See* Doc. No. 183, *Illinois Bell Tel. Co. v. Global NAPs Illinois, Inc., et al.,* Case No. 06-3431 (Darrah, J.).

In February of 2008, AT&T Illinois filed a complaint against Global Illinois with the ICC, alleging that Global Illinois had violated the terms of the ICA. On February 11, 2009, the ICC issued its final order. The ICC held that Global Illinois is in violation of the parties ICA agreement for failure to pay AT&T Illinois for services rendered. AT&T submitted the required bill, which amounted to $1,536,000.78. Global Illinois subsequently filed motions to stay the ICC's order and requesting a rehearing; both motions were denied. To date, Global Illinois has yet to pay AT&T Illinois as ordered by the ICC.

The ICC does not have the authority to issue a money judgment that AT&T Illinois can enforce. Thus, AT&T Illinois filed the instant complaint on April 9, 2009, seeking money judgment for the amounts the ICC has ordered Global Illinois to pay pursuant to Section 5-201 of the Illinois Public Utilities Act ("PUA"), which, in pertinent part, provides as follows:

In case any public utility shall do, cause to be done or permit to be done in any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act.

On May 11, 2009, Global Illinois filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint. Dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6) if the factual allegations of the complaint, viewed in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief. *Bell Atlantic Corp v. Twombly*, 550 U.S. 561-62 (2007). In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Indiana*, 361 F.3d 998, 1001 (7th Cir 2004). To state a claim upon which relief can be granted, a plaintiff must satisfy two conditions: first, the complaint must describe the claim in sufficient detail to "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests," and, second, its allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007)). If the complaint fails to provide such allegations, "the plaintiff pleads itself out of court." *Id.*

# ANALYSIS

Global Illinois admits that the terms and conditions of the parties' business relationship were established by a 2003 ICA; yet, Global Illinois argues there are three reasons why Section 5-201 of the PUA does not apply to this case.

First, Global Illinois asserts that AT&T Illinois has no complaint regarding the rates and services of Global Illinois. Rather, the Complaint centers on the lack of payment for AT&T Illinois' *own* rates and services.

Section 13-101 states in full:

> § 13-101. Application of Act to telecommunications rates and services. Except to the extent modified or supplemented by the specific provisions of this Article, the Sections of this Act pertaining to public utilities, public utility rates and services, and the regulation thereof, are fully and equally applicable to noncompetitive telecommunications rates and services, and the regulation thereof, except where the context clearly renders such provisions inapplicable. Except to the extent modified or supplemented by the specific provisions of this Article, Articles I through V, Sections 8-301, 8-505, 9-221, 9-222, 9-222.1, 9-222.2, 9-250, and 9-252.1, and Articles X and XI of this Act are fully and equally applicable to competitive telecommunications rates and services, and the regulation thereof; in addition, as to competitive telecommunications rates and services, and the regulation thereof, all rules and regulations made by a telecommunications carrier affecting or pertaining *to its charges or service* to the public shall be just and reasonable, provided that nothing in this Section shall be construed to prevent a telecommunications carrier from accepting payment electronically or by the use of a customer-preferred financially accredited credit or debit methodology. As of the effective date of this amendatory Act of the 92nd General Assembly, Sections 4-202, 4-203, and 5-202 of this Act shall cease to apply to telecommunications rates and services.

Global Illinois relies on the language of Section 13-101, which provides that a regulated carrier may only be subject to suit for claims "pertaining to *its* charges or service." 220 ILCS 5/13-101 (emphasis added).

AT&T Illinois counters that Global Illinois relies on the wrong portion of Section 13-101. Section 13-101 has two operative provisions separated by a semi-colon. The first governs the applicability of Section 5-201 of the PUA, stating that Article V is "fully and equally applicable to competitive telecommunication rates and services[1], and the regulation thereof." 220 ILCS 5/13-101. The second provision imposes additional requirements wholly apart from the applicability of Section 5. AT&T Illinois contends that the relevant portion of Section 13-101 is the first provision and that the additional requirements of the second provision of Section 13-101 relied upon by Global Illinois and emphasized above are immaterial. Specifically, it argues that the ICC's order plainly pertains to the "regulation" of Global Illinois' competitive telecommunication services and, therefore, falls under the first provision of Section 13-101.

Although Global Illinois' argument is based on the second provision of Section 13-101, the relevant portion of the Section is the first provision cited by AT&T Illinois. The first provision pertains to the "regulation" of Global Illinois' telecommunication services, which is the thrust of AT&T Illinois' Complaint. The fact that AT&T Illinois has no complaint regarding the rates and services of Global Illinois is immaterial.

---

[1] Global Illinois does not contend that it is a competitive telecommunication services provider.

Viewed in the light most favorable to AT&T Illinois and based on the obvious intent of Section 13-101, the Complaint could reasonably support a finding in favor of the Plaintiff. Accordingly, Defendants' first ground is insufficient to warrant dismissal of the Complaint.

Global Illinois also asserts that AT&T Illinois has no standing to dispute the just and reasonable nature of Global Illinois' rates and services. Global Illinois points to the statute's language, specifying that the complainant must be considered a member of the "public" who has been aggrieved by the carrier's "rates and services." 220 ILCS 5/13-101. Based on this reading of the statute, Global Illinois contends that AT&T Illinois is not a member of the "public" as the term is used in the statute and, therefore, has no standing.

AT&T Illinois again points out that its Complaint is premised on the first provision of Section 13-101, which states that Article V of the PUA (which includes Section 5-201) is "fully and equally applicable to competitive telecommunication rates and services, and the regulation thereof." Under this provision, AT&T Illinois need not be a member of the "public" to have proper standing as it would under the second provision of the Section.

As AT&T Illinois' Complaint is pled, the Complaint could reasonably support a finding in favor of the Plaintiff. Accordingly, Defendants' second theory is insufficient to warrant dismissal of the Complaint.

Finally, Global Illinois contends that 220 ILCS 5/13-101 is not intended to govern *sui generis* contractual relationships between telecommunication carriers. Global Illinois further asserts that the statute deals with public duties as opposed to private ones.

6

AT&T Illinois argues that the very purpose of Section 5-201 is to provide recourse to a court where a regulated entity refuses to comply with an order of the ICC. Furthermore, Section 13-101 makes it clear that Section 5-201 applies to telecommunication providers.

However, Global Illinois cites no case law or legislative history to support this misinterpretation of the statute. Moreover, as AT&T Illinois argues, the PUA clearly confers on the ICC's authority to interpret and enforce interconnection agreements between carriers. This would be rendered meaningless without the statutory support of Section 5-201 and Section 13-101. Viewed in the light most favorable to AT&T Illinois, the Complaint could reasonably support a finding in Plaintiff's favor. Accordingly, Defendants' third ground is insufficient to warrant dismissal of the Complaint.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is denied.

Date: August 31, 2009

JOHN W. DARRAH
United States District Court Judge

7