UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS BELL TELEPHONE CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 09-cv-2189 |
| v. | ) |
| | ) Judge John W. Darrah |
| GLOBAL NAPS ILLINOIS, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This case involves a dispute between Illinois Bell Telephone Co. ("AT&T Illinois" or "AT&T") and Global NAPs Illinois, Inc. ("Global"). AT&T and Global are parties to an interconnection agreement ("ICA"), which was formed pursuant to the Telecommunications Act of 1996 ("Telecom Act"), *codified at* 47 U.S.C. § 251 *et seq.* After Global refused to pay AT&T Illinois for services AT&T provided under the ICA, AT&T filed a complaint with the Illinois Commerce Commission ("ICC").[1]

The ICC ruled in AT&T's favor and ordered Global to pay the total amounts owed to AT&T. Global did not comply with that order, and two federal suits followed. First, AT&T brought the instant action, stating a single claim against Global under the Illinois Public Utilities Act ("PUA"), *codified at* 220 ILCS 5/1-101 *et seq.*, and asserting a right to damages incurred as a result of Global's failure to abide by the ICC's order to

---

[1] AT&T initially presented its breach-of-ICA claims to this Court in a complaint filed on June 23, 2006; but the Court held that the Telecom Act requires that such claims first be presented to the ICC. *See Ill. Bell Tel. Co. v. Global NAPs Ill., Inc.*, 06-cv-3431, slip op. (N.D. Ill. Dec. 17, 2007).

pay AT&T. Global later filed a counterclaim, claiming a right to set off any judgment by amounts owed to Global by AT&T.

Then, on May 22, 2009, Global filed a separate action pursuant to the Telecom Act, petitioning for review of the ICC's order regarding Global's breach of the ICA. Both cases were assigned to this Court.[2]

On April 12, 2010, both parties moved for summary judgment on AT&T's sole claim in this case. AT&T also moved for summary judgment on Global's counterclaim. Those motions are presently before the Court.

## BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.[3] AT&T Illinois is an Illinois corporation and an incumbent local exchange carrier in Illinois.[4] Pl. 56.1(a)(3) ¶¶ 1, 2.

---

[2] The ICC's order was affirmed in another memorandum opinion and order issued today. See *Illinois Bell Tel. Co. v. Global NAPs, Inc.*, No. 09-cv-3113, slip op. (N.D. Ill. Oct. 21, 2010) (*Illinois Bell I*). A more thorough discussion of the business relationship between AT&T and Global, the formation of the ICA, and the technology involved in the connection and operation of telecommunications networks is contained in that opinion.

[3] Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. See *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in its opponent's statement in the manner required by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (*Smith*).

[4] "Incumbent local exchange carriers" are carriers that were providing local phone service when the Telecom Act was passed. They are comprised mostly of the "Regional Bell Operating Companies" or "Baby Bells" that were created as a result of a consent decree settling the United States' antitrust suit against AT&T in the early 1980s.

Global is a Delaware corporation with its principal place of business in Massachusetts. Def. 56.1(a)(3) ¶ 1. At all times relevant to AT&T's and Global's claims, Global was a local exchange carrier, certified by the ICC to provide telecommunications-related services in Illinois. *Id.* ¶ 1.

In 2003, AT&T and Global entered into the ICA, setting forth the rates, terms, and conditions under which the parties would interconnect their networks and exchange telecommunications traffic. Pl. 56.1(a)(3) ¶ 3. The ICA was reviewed and approved by the ICC according to the terms of the Telecom Act. *Id.* ¶ 3.

In February 2008, AT&T filed the complaint against Global with the ICC. *Id.* ¶ 4. Among other things, AT&T claimed that Global breached the ICA by failing to pay charges incurred for using AT&T's facilities and services. *Id.* On February 11, 2009, following full administrative proceedings, the ICC held that Global had breached the ICA. Specifically, the ICC found that Global was in violation of the parties' ICA "for failure to pay AT&T Illinois all amounts owing for DS3 facilities";[5] "for failure to pay AT&T Illinois all amounts owing for Transiting"; and "for failure to pay AT&T Illinois all amounts owing for reciprocal compensation." *Id.* ¶ 5. The ICC ordered Global to "pay the total amounts owed to AT&T Illinois within 5 days of the billing tendered by AT&T Illinois." *Id.* ¶ 6.

On February 17, 2009, AT&T Illinois submitted a final invoice for $1,536,000.78. *Id.* ¶ 7. Global never paid AT&T Illinois any of the amounts the ICC ordered it to pay.

---

[5] "DS3s" are high-capacity circuits used to deliver traffic between the parties' networks.

*Id.* ¶ 9. As of March 31, 2010, Global has incurred another $815,579.48 in late payment charges. *Id.* ¶ 7.

On February 23, 2009, Global filed a motion for a stay of the February 11 Order; on March 11, 2009, that motion was denied. *Id.* ¶ 8. On March 16, 2009, Global filed an application for rehearing of the February 11 Order; that application was denied on March 25, 2009. *Id.* ¶ 8.

On April 9, 2009, AT&T filed this action under the PUA, claiming a right to enforce the ICC orders and to recover for injuries arising from Global's failure to comply with those orders. Def. 56.1(a)(3) ¶ 3.

On November 2, 2009, Global filed the set-off counterclaim in this action, asserting that AT&T owed Global for unpaid reciprocal compensation and "various offsets and credits." Docket No. 30 ¶¶ 6-8. Global sent AT&T Illinois a series of invoices dated between November 1, 2004, and February 1, 2009, asserting that AT&T owed Global reciprocal compensation under the ICA. *See* Pl. 56.1(a)(3) ¶¶ 11, 13, 15, 17, 16, 21, 23. The total amount invoiced between those dates was $63,560.92. *Id.* ¶ 25.

In response to Global's invoices, AT&T sent a number of letters dated between February 10, 2005, and February 18, 2009. *See id.* ¶¶ 12, 14, 16, 18, 20, 22, 24. In these letters, AT&T notified Global that AT&T disputed certain of the invoiced amounts based on discrepancies between AT&T's internal usage records and the usage charged by Global. *Id.* More specifically, AT&T asserted that its internal usage records indicated that Global was billing AT&T for traffic that was not subject to intercarrier-compensation obligations under the ICA. *Id.* ¶ 30. Although AT&T offered to make its internal usage

4

records available to Global, Global never attempted to substantiate or reconcile the usage figures it had originally provided to AT&T. *Id.* ¶ 31. Global responds that these internal records related only to traffic originating from carriers not subject to the ICA.[6] Def. 56.1(b)(3)(C) ¶ 49. Further, AT&T never offered to produce any documentation from third parties that would confirm the origin of the disputed traffic. *Id.* ¶ 51. According to Global, the records indicated that the traffic was, in fact, subject to reciprocal compensation. *Id.* ¶¶ 42, 47. AT&T's claim that half of the traffic it delivered in any given month was from third-party carriers is not consistent with Global's understanding of the parties' plans. *Id.* ¶ 48.

In addition to withholding payment of the disputed charges, AT&T also withheld payment of other specified charges because Global was past due in its payments to AT&T. Pl. 56.1(a)(3) ¶ 32. Of the forty letters AT&T sent to Global, only six of them did not expressly contain both of the aforementioned explanations for not paying Global's invoices. *Id.* ¶ 34.

Global neither admits nor denies that AT&T sent the letters in question. Instead, Global admits only that AT&T *claims* to have sent the letters. Global then asserts that its representatives were unable to locate documentation to substantiate AT&T's claims. Here is an example of one of Global's responses:

---

[6] AT&T responds to this factual assertion with a general denial that is unsupported by any evidence and by asserting that a stack of billing records and correspondence "speaks for itself." *See* Pl. Resp. to Def. 56.1(b)(3)(C) ¶ 49. AT&T provides similar responses to other statements of fact. These failures to properly deny Global's factual assertions result in those facts' being deemed admitted for purposes of summary judgment. *See Smith*, 321 F.3d at 683.

> Global admits that AT&T claims that, on February 10, 2005, AT&T notified Global that it disputed $1,958.19 of the invoiced amounts based on discrepancies between AT&T's internal usage records and the usage charged by Global, and AT&T claims it indicated that it would withhold payment on the balance of $5,660.28 until Global became current on significant past due amounts allegedly owed to AT&T. Global states further that Global's representatives were unable to locate documentation in Global's records showing that AT&T had sent, or that Global had received, AT&T letters disputing reciprocal compensation charges.

Def. 56.1(b)(3)(B) ¶ 12.

Each of these responses by Global relies on the same paragraph of an affidavit filed by Global's Director of Network Operations, Jeffrey Noack. That paragraph states as follows:

> My review of Global's records did not reveal that Global had copies of, or had in fact, received AT&T's dispute letters. In all events, the parties, [*sic*] were never able to resolve this dispute. Moreover, I found no evidence in Global's records that AT&T requested informal or formal dispute resolution under the ICA after Global submitted its invoices for reciprocal compensation and declined to accept AT&T's claims of contractual exemptions. To this day, AT&T has not denied that AT&T delivered the disputed traffic to Global and that Global terminated it. This left the matter as simply an unresolved billing dispute between the parties under the ICA.

Aff. of Jeffrey Noack ¶ 13.

Global's responses do not raise a genuine issue of material fact as to whether AT&T sent the letters in question. Global simply asserts that one person conducted an unspecified search of unspecified records without finding the letters. Global does not describe its records-retention policies and does not explain when, where, or how Noack conducted his search. Nor does Global actually deny receiving the letters. Accordingly, Global is deemed to have admitted that AT&T sent each of the letters in question.

6

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

### *AT&T's PUA Claim*

AT&T asserts that Global's failure to comply with the ICC's February 11 Order is actionable under the PUA, which makes civil damages available against a public utility when an act or omission by that utility causes injury to another:

> In case any public utility . . . shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, the public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was willful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment. An action to recover for such loss, damage or injury may be brought in the circuit court by any person or corporation.

220 ILCS 5/5-201.

Another provision in the PUA makes section 5-201 applicable to competitive telecommunications providers: "Except to the extent modified or supplemented by the specific provisions of this Article, Articles I through V . . . of this Act [which includes 220 ILCS 5/5-201] are fully and equally applicable to competitive telecommunications rates and services, and the regulation thereof . . . ."[7] 220 ILCS 5/13-101.

Global makes two arguments as to why Global is entitled to summary judgment and AT&T is not: (1) the civil-damages provision in the PUA does not apply to a case where one telecommunications carrier is seeking to enforce an ICC decision against another based on a breach of an interconnection agreement; and (2) an action for money

---

[7] "Telecommunications service," as defined by Illinois law, "includes access and interconnection arrangements and services." 220 ILCS 5/13-203.

damages is premature in light of Global's appeal of the ICC's orders, which, at the time of AT&T's motion, was presently pending before this Court.

Global's first argument was resolved in a Memorandum Opinion and Order entered on August 31, 2009, in which Global's previously filed motion to dismiss was denied. Indeed, Global now states, "[T]he Court should enter Summary Judgment for Global for the reasons stated by Global in its Rule 12(b)(6) motion to dismiss this proceeding, which was denied by this Court on August 31, 2009." Docket No. 44 at 1. As Global clearly recognizes, the legal question regarding the statute's applicability to the case at hand has been decided in AT&T's favor. Global has offered no reason for the Court to revisit its arguments. Nor has Global contested any of the facts that form the basis of AT&T's claim. Global admits that the ICC ordered it to pay AT&T, that AT&T provided invoices for over $1.5 million (plus late fees), and that Global has not paid those invoices. Although Global does not admit here that it owes the fees in question, that issue has been decided by the ICC.

Because Global has appealed that ICC order, Global argues that summary judgment in this case is premature. However, the decision entered today in the parallel case referenced above (*Illinois Bell I*) affirms the ICC's ruling and resolves that appeal in AT&T's favor. *See supra* note 2. Thus, Global has no grounds for disputing the ICC's decision that Global owes money to AT&T, no grounds for contesting the application of the PUA to the case at hand, and no evidence that raises a genuine issue of material fact as to the elements of AT&T's claim against it. Accordingly, AT&T is entitled to summary judgment on its claim for damages under the PUA.

## Global's Counterclaim

AT&T also moves for summary judgment on Global's counterclaim, which reads as follows:

> During the period of time that Global and AT&T exchanged traffic, Global terminated traffic from AT&T customers to customers of Global. Pursuant to the parties' interconnection agreement, AT&T was obligated to pay Global reciprocal compensation for the termination of that traffic. Despite being billed by Global for that reciprocal compensation, AT&T has not paid Global all of the amounts billed by Global.
>
> During the period of time that Global and AT&T exchanged traffic, AT&T determined that Global was entitled to various credits and offsets to AT&T's charges. Despite requests by Global for these credits and offsets to be reflected in AT&T invoices to Global, AT&T failed to do so.
>
> Any amounts owed to Global because of AT&T's failure to pay reciprocal compensation and to provide promised credits should be set off against the amount found to be owed by Global to AT&T under its complaint.

Docket No. 30 ¶¶ 6-8.

AT&T first argues that Global's counterclaim is "grossly underpleaded." *See* Docket No. 46 at 11. Specifically, AT&T notes that Global did not allege what services were provided to AT&T, what amounts were due, or when those amounts were due. Notwithstanding that argument, however, AT&T identifies over forty invoices submitted by Global and not paid by AT&T. Each of these invoices asserts a right to reciprocal compensation and plainly forms the basis of Global's counterclaim. Thus, AT&T had adequate notice of Global's claim that it was entitled to payment on invoices Global had previously submitted to AT&T.

Moreover, briefs on a motion for summary judgment are not the place for AT&T to argue that Global has failed to state a claim for relief, *see* Fed. R. Civ. P. 12(h)(2), or

10

that Global's counterclaim is so vague as to make a response impossible, *see* Fed. R. Civ. P. 12(e). Therefore, AT&T is not entitled to summary judgment based on its argument that Global's counterclaim is "underpleaded."

However, in response to AT&T's argument regarding the sufficiency of the counterclaim, Global also argues that genuine issues of material fact exist regarding invoices Global allegedly submitted for $541,295.70 worth of "trunking facility charges." Def. 56.1(b)(3)(C) ¶ 54. Presumably, Global is attempting to argue that these charges constitute the "various credits and offsets" to which Global asserts it is entitled in its counterclaim. This same argument, however, was squarely rejected by the ICC in its February 11 Order. Pl. Resp. to Def. 56.1(b)(3)(C) ¶ 53. As explained above, that order has now been affirmed such that no issue of material fact remains; AT&T does not owe Global any money for "trunking facility charges."

AT&T next argues that Global's claim is time barred to the extent it relies on invoices submitted prior to November 2, 2007 (two years before Global first asserted its set-off counterclaim). The ICA imposes a two-year limitations period on all claims arising from the ICA:

> [N]o claim may be brought for any dispute arising from this Agreement more than twenty-four (24) months from the date the occurrence which gives rise to the dispute is discovered or reasonably should have been discovered with the exercise of due care and attention.

ICA § 10.1.[8]

---

[8] A copy of the ICA was attached as Exhibit 2 to the Declaration of Hans J. Germann in support of AT&T's Motion for Summary Judgment.

"It is well established that parties to a contract may agree upon a shortened contractual limitations period to replace a statute of limitations," *Medrano v. Prod. Eng'g Co.*, 774 N.E.2d 371, 376 (Ill. App. Ct. 2002); and Global does not contend otherwise. Instead, Global argues that the ICA employs a broad definition of "claim" such that a party to the ICA need only provide notice of a *threatened* claim within two years. In support of this argument, Global argues that the ICA defines "Claim" as "any pending or threatened claim, action, proceeding or suit." ICA § 1.1.30.

As AT&T notes, however, that definition is for "Claim" with a capital "C." The ICA provides that "Capitalized Terms used in this Agreement shall have the respective meanings specified below, in Section 1.x of each appendix attached hereto, and/or as defined elsewhere in this agreement." ICA § 1. As it appears in section 10.1 (the section providing the period of limitations), "claim" is not capitalized. Thus, the contractual definition does not apply.[9] Therefore, argues AT&T, "claim," as used in section 10.1, should be understood to mean "cause of action."

Adopting that definition, AT&T argues that the ICA bars the filing of a lawsuit for any claim that is over two years old. Global, on the other hand, argues that the ICA merely requires that the aggrieved party provide notice of a threatened claim to the other party within two years of the time the occurrence giving rise to the dispute was discovered or should have been discovered.

Although Global expends substantial effort to assert that bringing a "claim" is something short of filing a claim in a lawsuit, Global does not identify what acts would

---

[9] Notably, "Claim" *is* capitalized elsewhere in the ICA. *See, e.g.*, ICA § 13.4 (providing release of liability "against any Loss or Claim").

12

provide contractually sufficient notice of its claims. Nor does Global identify any facts to suggest it ever provided any such notice of its claims to AT&T (other than submitting the invoices themselves). Global's contention that its act of submitting an invoice satisfies the contractual period of limitations for any claim later based on AT&T's failure to pay that invoice is far from persuasive.

However, AT&T's suggested interpretation also cannot be correct, for it is undermined by ICA provisions discussed elsewhere in its briefs. For example, the ICA provides that *"Dispute Resolution shall commence upon one Party's receipt of written notice of a controversy or claim* arising out of or relating to this Agreement or its breach. No party may pursue any claim unless such written notice has first been given to the other Party." ICA § 10.3.1 (emphasis added). Furthermore, under a heading of "Formal Dispute Resolution," the ICA provides, "Claims will be subject to elective arbitration pursuant to Section 10.7 *if, and only if, the claim is not settled through informal Dispute Resolution and both Parties agree to arbitration.* If both Parties do not agree to arbitration, then either Party may proceed with any remedy available to it pursuant to law, equity or agency mechanism." ICA § 10.6.3 (emphasis added). Thus, a party can proceed with legal remedies (e.g., by filing a lawsuit) only *after* a claim is first brought forward for informal dispute resolution. Therefore, initiating a lawsuit cannot be synonymous with bringing a "claim" for purposes of the ICA. Because dispute resolution is required for all claims, the ICA must be interpreted as providing a two-year limitation on the time for initiating dispute-resolution procedures, not the time for bringing a lawsuit if the claim cannot be resolved by other means. The relevant question is, thus,

whether Global initiated contractual dispute-resolution procedures within two years of the occurrence giving rise to its claims.

According to AT&T, Global *never* initiated the appropriate dispute-resolution procedures. As explained above, the ICA requires that any claims first proceed through contractual dispute resolution before they can be litigated in court:

> The Parties desire to resolve disputes arising out of this Agreement without litigation. Accordingly, the Parties agree to use the following Dispute Resolution procedures with respect to any controversy or claim arising out of or relating to this Agreement or its breach.

ICA § 10.2.

The contractual dispute-resolution procedure begins with written notice of a controversy or claim arising out of or relating to the ICA or its breach. ICA § 10.3.1. For billing disputes, the first stage of dispute resolution is referral to the appropriate service center. ICA § 10.4. The ICA requires the parties to attempt to resolve billing disputes within thirty to ninety days but also states that "resolution may take longer depending on the complexity of the dispute." ICA § 10.4.4. If a dispute could not be resolved within thirty days, Global had an obligation to notify AT&T of the status of the dispute and the expected resolution date. ICA § 10.4.4. If AT&T were unable to obtain a satisfactory resolution through Global's service center, AT&T had a right to notify Global in writing that AT&T wished to invoke informal dispute resolution. *See* ICA § 10.4.5.

Although it is Global who now raises the dispute regarding the bills it submitted to AT&T, it was AT&T who initiated the dispute by submitting dispute letters in response to Global's invoices. It is apparent that the dispute was not resolved through

14

Global's service center and that AT&T did not invoke informal dispute resolution. *See* Pl. 56.1(a)(3) ¶ 41. Instead, AT&T simply refused to pay the invoices, and Global apparently did nothing about it until filing its counterclaim in this action. The section regarding billing disputes is silent as to what must occur when the *billing party* fails to respond to a dispute. Indeed, that section only provides a means for one party to dispute charges on the other's invoices; it does not provide a means for initiating collection procedures when the other party refuses to pay.

But that would mean that the service-center procedures do not apply to Global's claim. It cannot be interpreted to mean that *none* of the dispute-resolution procedures apply. Indeed, the ICA clearly provides that its dispute-resolution procedures apply "with respect to *any* controversy or claim arising out of or relating to [the ICA] or its breach," ICA § 10.2.1 (emphasis added), and that no claim may be pursued without providing written notice to the other party, ICA § 10.3.1. The ICA also provides that formal dispute resolution (which would include filing a claim in court) may only be invoked "[i]f the Parties are unable to resolve the dispute through the informal procedure described in Section 10.5." ICA § 10.6.1.

Informal dispute resolution can be initiated by written notice as provided by section 10.4.5 (if it is preceded by an unsuccessful billing dispute) or as provided by section 10.3 (if it is not a claim that must first proceed through a service center). It is undisputed that Global filed a counterclaim that arose from the ICA without providing written notice and without attempting to resolve its dispute through informal dispute resolution as provided in the ICA. Therefore, Global failed to comply with the

15

contractual prerequisites to filing a formal claim in federal court. Thus, Global is contractually barred from pursuing that claim until it has exhausted its contractual dispute-resolution obligations; and AT&T is entitled to summary judgment.

## CONCLUSION

For the reasons explained above, Global's Motion for Summary Judgment is denied. AT&T's Motion for Summary Judgment on its PUA claim and AT&T's Cross-Motion for Summary Judgment on Global's counterclaim are granted.

Date: October 21, 2010

JOHN W. DARRAH
United States District Court Judge